IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br>   vs.<br><br>ROMAN SELEZNEV,<br>    aka TRACK2,<br>    aka ROMAN IVANOV,<br>    aka RUBEN SAMVELICH,<br>    aka nCuX,<br>    aka Bulba,<br>    aka brandysli64,<br>    aka smaus,<br>    aka Zagreb,<br>    aka shmak,<br><br>              Defendant. | MAGISTRATE CASE NO. 14-00056<br><br>**DECISION AND ORDER**<br>**RE: MOTION TO DISCHARGE AND**<br>**RELEASE DEFENDANT PURSUANT TO**<br>**FED. R. CRIM. P. 12(b)(3)(A)** |

      The Motion to Discharge and Release Defendant Pursuant to FED. R. CRIM. P. 12(b)(3)(A) came before the court on July 31, 2014. Having considered the parties' arguments and submissions, as well as relevant caselaw and authority, the court orally **DENIED** said motion. The court now issues its written decision.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 7, 2014, the United States filed a Petition for Writ of Removal as to Roman Seleznev.[1] *See* ECF No. 1. On that same day, Roman Seleznev (hereinafter "Seleznev") made his initial appearance before Magistrate Judge Joaquin V.E. Manibusan, Jr. However, the initial appearance (hereinafter referred to as "Rule 5 hearing") was continued to July 22, 2014, because Seleznev wanted to retain his own counsel. On July 18, 2014, Seleznev's counsel filed a motion to continue and requested a briefing schedule on a Rule 12 motion that he anticipated to file. *See* ECF No. 10. Consequently, the court vacated the Rule 5 hearing, set a briefing schedule, and subsequently set a hearing date on the motion for discharge and release, as well as the Rule 5 hearing (in the event the motion was denied).[2]

On July 21, 2014, Seleznev filed his Rule 12 motion, seeking the court to (1) decline jurisdiction and terminate the prosecution, (2) discharge the case, (3) release him, and (4) issue such other and further relief as may be appropriate. *See* ECF No. 13, at 17. Seleznev alleges the following with respect to the manner in which he was arrested:

- On or about July 5, 2014, U.S. Secret Service agents:
    - detained Seleznev at the Ibrahim Nasir International Airport (more commonly known as the Malé International Airport) as he was preparing to board a commercial airliner scheduled to depart at approximately 11:55 a.m. local time to Moscow;
    - informed him that he was under arrest;
    - separated him from his partner and her minor child;
    - confiscated his mobile phone and laptop and prohibited him from having any communication with his family;
    - prohibited him from making telephone calls;
    - placed him in a confined holding area;
    - searched his person;
    - physically pushed him onto a couch and instructed him to remain seated;

---

[1] Filed with the Petition was a copy of a Superseding Indictment pending in the Western District of Washington and an arrest warrant issued in that district.

[2] Seleznev also filed a motion to continue the hearing on the motion for discharge and release, based on discovery request (ECF No. 34). The court denied the motion and accepted all factual allegations in Seleznev's favor as true for the purposes of hearing the motion for discharge and release.

2

- presented him with a copy of the indictment originating from the U.S. District Court for the Western District Washington;
- informed him that he was under arrest; and
- handcuffed him.
- Thereafter, Seleznev was led from the holding facility in the airport onto a private jet that was flown to Guam.
- Upon arrival on Guam, Seleznev was transferred into the custody of the U.S. Marshals Service, and he was permitted to make one telephone call.
- Seleznev contends that he was never taken into custody by law enforcement officials of the Republic of the Maldives.
- Seleznev further contends that the United States purposefully circumvented the laws of the Republic of the Maldives and the judicial process of that country.

*See* ECF No. 13, at 3-6. Based on these factual allegations, Seleznev makes the following legal arguments, which will be discussed *infra*: (1) the court lacks jurisdiction because the manner in which he was arrested constitutes shocking and outrageous government conduct amounting to a due process violation, such that this court is divested of personal jurisdiction over him; (2) the arrest violates customary international law and should shock the conscience of this court and cause it to divest itself of jurisdiction; and (3) the arrest violates *jus cogens* norms of international law and thus, the court should exercise its supervisory power and dismiss the case. *Id.* at 7-16.

As noted by the court during the motion hearing, the court herein incorporates all factual allegations made by Seleznev in his filing and during the July 31, 2014 hearing, and hereby accepts them as true for the purposes of addressing Seleznev's motion for discharge and release.

**II. ANALYSIS**

    **a. The court has personal jurisdiction over Seleznev.**

Seleznev argues that this court does not have personal jurisdiction over him. Thus, in order for this court to proceed with the Rule 5 hearing, the court must first determine personal jurisdiction. Seleznev's argument on personal jurisdiction is two-fold: first, the arrest constitutes shocking and outrageous government conduct that it amounts to a due process violation; and

second, the arrest violates customary international law and should shock the conscience of this court. *See* ECF No. 13, at 9-14.

The Ninth Circuit has noted that the starting point in a personal jurisdictional challenge "is the venerable principle that 'the manner by which a defendant is brought to trial does not affect the government's ability to try him.'" *United States v. Struckman*, 611 F.3d 560, 571 (9th Cir. 2010) (quoting *United States v. Matta-Ballesteros*, 71 F.3d 754, 762 (9th Cir. 1995)). This is known as the *Ker/Frisbie* doctrine. Recognized exceptions to the *Ker/Frisbie* doctrine are "if either: (1) the transfer of the defendant violated the applicable extradition treaty, or (2) the United States government engaged in misconduct of the most shocking and outrageous kind to obtain his presence." *United States v. Anderson*, 472 F.3d 662, 666 (9th Cir. 2006) (citing *Matta-Ballesteros*, 71 F.3d at 762–64) (internal quotation marks omitted).

There is no extradition treaty between the United States and the Republic of the Maldives. Therefore, the court will only address the second exception: whether the government's conduct was so shocking and outrageous that it would require this court to divest its personal jurisdiction over Seleznev.

Having accepted all the factual allegations made by Seleznev in his filings and at the July 31, 2014 hearing as true, the court finds that these factual allegations are not shocking and outrageous. Although the court does not condone the actions of the government as alleged by Seleznev, Seleznev's factual allegations do not meet the extremely high standard required for mandatory divestment of personal jurisdiction. For example, in *Matta-Ballesteros*, the defendant was forcibly abducted from his home in Honduras, wherein the U.S. Marshals "bound his hands, put a black hood over his head, [and] thrust him on the floor of a car[.]" *Matta-Ballesteros*, 71 F.3d at 761. The defendant in that case also alleged that he was beaten and tortured by a stun gun

applied to different parts of his body, including his genitals. *Id.* The court held that the government's conduct was not so shocking and outrageous as to warrant dismissal. *Id.* at 763.

As to Seleznev's argument that the arrest violates customary international law, there is no U.S. federal caselaw that specifically allows for mandatory divestment of personal jurisdiction for such.

### b. The court does not have the authority to entertain Seleznev's motion to dismiss.

Seleznev argues that the circumstances of his arrest violate *jus cogens* norms of international law and thus, the court should exercise its supervisory power and dismiss the case. ECF No. 13, at 15-16.

In cases such as this, wherein the defendant was arrested in a district other than where the offense was allegedly committed, Rule 5 of the Federal Rules of Criminal Procedure provides for how the court should properly proceed. Pursuant to FED. R. CRIM. P. 5(c)(3)(D), this court "must transfer the defendant to the district where the offense was allegedly committed if: (i) the government produces the warrant, a certified copy of the warrant, or a reliable electronic form of either; and (ii) the judge finds that the defendant is the same person named in the indictment, information, or warrant[.]"

In this case, the United States has produced a certified copy of the arrest warrant for an individual named Roman Seleznev. At the Rule 5 hearing, the court found that the individual arrested is the same person named in the Superseding Indictment.

Any other matter must be addressed by the district where the offense was allegedly committed. In *United States v. Green*, 499 F.2d 538 (D.C. Cir. 1974), an indictment was pending in the Southern District of Florida but the indictees were arrested in the District of Columbia. The indictees then moved the District Court for the District of Columbia for dismissal of the

indictment pending in Florida, and the district court granted the dismissal of the case. *Id.* at 539.
The appellate court overturned the district court's dismissal and held that "[t]he clear mandate of
[former] Rule 40[3] sharply limits the function and authority of the magistrate, and by the same
token the jurisdiction of the district court for the transferor district. Where the terms of [the
removal rule] are met in a proceeding for removal in furtherance of a prosecution by indictment,
that court lacks power to dismiss either the proceeding or the prosecution." *Id.* at 541. In
reaching its conclusion, the appellate court stated:

> A contrary provision would threaten consequences seriously adverse to the
> orderly administration of criminal justice, not the least of which is potential
> frustration of the unequivocal objective of [the removal rule] to avoid delay in
> bringing arrestees to trial. The full panoply of defenses is, of course, available to
> the arrestee in the transferee court, and any inconvenience incidental to assertion
> of defenses there is simply unavoidable.

*Green*, 499 F.2d at 541. Similarly, the Ninth Circuit in *Vazquez v. United States District Court for the District of Nevada*, 572 F.2d 697 (9th Cir. 1978), refused to allow a defendant resisting his removal under the former Rule 40 to file a motion to suppress. *See also Frost v. Yankwich*, 254 F.2d 633, 637 (9th Cir. 1958) ("Petitioner's remedy, if any, lies in the Illinois jurisdiction. If he has a defense, it is there that it must be presented.").

### III. CONCLUSION

The court finds that the factual allegations by Seleznev are not so shocking and outrageous that it would require mandatory divestment of personal jurisdiction. In addition, the court finds that it does not have the authority to entertain Seleznev's motion to dismiss the case, as that authority lies within the indicting court. Accordingly, for the reasons set forth above, the court hereby **DENIES** Seleznev's motion for release and discharge pursuant to FED. R. CRIM. P. 12(b)(3)(A). This court notes, however, that its decision on Seleznev's motion shall not preclude

---

[3] Effective December 1, 2002, the substance of former Rule 40(a) was moved to Rules 5 and 5.1. *See* Advisory Committee Notes to 2002 Amendments to FED. R. CRIM. P. 40.

him from reasserting the same allegations at the U.S. District Court for the Western District of Washington for further consideration by that court, based on full discovery.

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
    **Chief Judge**
**Dated: Aug 07, 2014**